275 A.2d 278.

WILFRED PLOURDE *vs.* ROSE ROSENBERG.

MARCH 24, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a Superior Court negligence action. The jury returned a verdict for the plaintiff. The trial justice granted the defendant's motion for a new trial. Two appeals followed. One is the plaintiff's appeal from the order granting the defendant's motion for a new trial. The other is the defendant's appeal from the denial of her motion for a directed verdict.

On September 5, 1962 at about 1:30 p.m., Plourde, then a resident of Worcester, Massachusetts, was the owner and the operator of a three-quarter ton pickup truck which was involved in a collision with defendant's automobile, that was being operated by her 17-year-old son. The collision occurred in Smithfield at the junction of Douglas and Branch Pikes. Douglas Pike begins in Providence and terminates in Burrillville. As it proceeds through Smithfield, Douglas Pike runs in a general north-south direction. Branch Pike begins at the easterly edge of Douglas Pike and goes in a general northeasterly direction to the Massachusetts state line. There is a yield sign controlling traffic going from the Branch to the Douglas Pike. Plourde was traveling southwesterly on Branch Pike. His destination was Providence. The Rosenberg automobile was proceeding north on Douglas Pike towards Pascoag, to the home of

the Rosenbergs. Pascoag is a village in the Town of Burrill-ville.

The plaintiff testified that he saw the yield sign and stopped at the easterly edge of Douglas Pike. He then looked to his right (north) and to his left (south). He saw no traffic on Douglas Pike. Plourde said that his truck had reached the center of the highway when he heard the squeal of brakes. He looked to his left and saw the Rosenberg car coming at him. The car was then 60 to 70 feet away. The collision occurred a half-second later. Branch Pike as it reaches Douglas Pike curves to the left. Plourde estimated that when he stopped and looked to his left (south) down Douglas Pike, he could see "approximately a couple [of] hundred feet" to a "little" rise in the road. The plaintiff said that when he first saw the Rosenberg car, it was halfway between the rise and his truck. A passenger in the truck corroborated plaintiff's testimony.

The 17-year-old operator gave a different version of the events leading up to the collision. He said that he saw the truck coming down the Branch Pike and assumed that, in obedience to the yield sign, it would come to a full stop and allow the Rosenberg vehicle to proceed. Instead, the truck did not stop but came onto the Douglas Pike and into the northbound lane. This witness told the court and the jury that he had traveled on the Douglas Pike for many years and knew of the presence of the traffic control which he claims Plourde ignored. He estimated that a driver who stopped as Plourde says he did and looked to the south could see a distance of 370 yards.

At the trial defendant introduced without objection by plaintiff a series of photographs which show different views of the two highways as they join each other. One of the photographs depicted the view available to plaintiff when he stopped and looked southerly down the Douglas Pike. This particular exhibit depicts the southward visibility as

being unimpeded for a much greater distance than 200 feet described by plaintiff. The trial justice in his decision made specific reference to the photographs and concluded that Plourde either failed to stop, as he said he did, or after he had stopped, he left a place of safety and went onto Douglas Pike and confronted the teenager with a sudden emergency.

The plaintiff in seeking to restore the jury's verdict claims that the trial court overlooked the weather conditions on the day in question. The weather was described as being rainy or misty. This contention apparently represents an afterthought on Plourde's part. Our search of the record fails to disclose any testimony where plaintiff or his passenger said their southern visibility was impeded by the rain or mist. In fact, at one point in his testimony, Plourde insisted he could see "good" as he looked for any traffic on Douglas Pike. The trial justice performed his duties as they have been set forth in *Barbato* v. *Epstein*, 97 R. I. 191, 196 A.2d 836. It was Plourde's burden to persuade us that in considering defendant's motion for a new trial that the trial justice overlooked or misconceived material evidence on a controlling issue or was clearly wrong. *Dawson* v. *Rhode Island Auditorium, Inc.*, 104 R. I. 116, 242 A.2d 407. This he has failed to do.

The defendant is no more fortunate in her appeal than plaintiff. We said in *Ferreira* v. *McGrath Truck Leasing Corp.*, 104 R. I. 642, 247 A.2d 842, that it is an exceptional case where it can be said that a plaintiff is guilty of contributory negligence as a matter of law. The record here does not fall within the exception. Plourde's contributory negligence was an issue of fact to be determined in the first instance by the jury and then by the trial justice as he considered the motion for a new trial. The trial justice quite properly denied the defendant's motion for a directed verdict.

The plaintiff's and the defendant's appeals are denied and dismissed.

Motion to reargue denied.

*Edward I. Friedman, Quentin J. Geary,* for plaintiff.

*Francis V. Reynolds, Paul V. Reynolds,* for defendant.